# IN THE SUPREME COURT OF IOWA

No. 18–0097

Filed December 14, 2018

**LOWE'S HOME CENTERS, LLC,**

Appellant,

vs.

**IOWA DEPARTMENT OF REVENUE** and **COURTNEY M. KAY-DECKER,**

Appellees.

---

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

Taxpayer appeals district court judgment upholding department of revenue's assessment of sales tax on labor installing home improvements. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

E. Kendrick Smith of Jones Day, Atlanta, Georgia, and Allison M. Heffern and Desirée Kilburg of Shuttleworth & Ingersoll, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Hristo Chaprazov and James D. Miller, Assistant Attorneys General, for appellee.

**WATERMAN, Justice.**

In this appeal, we must determine whether the Iowa Department of Revenue (the Department) erred by assessing sales tax on labor installing building components sold by Lowe's Home Centers, L.L.C. Iowa Code section 423.2(6) (2007) imposes sales tax on many services including "carpentry," "electrical and electronic repair and installation," and "pipe fitting and plumbing," terms defined in regulations promulgated by the Department. But the statute exempts from sales tax services performed in connection with "new construction, reconstruction, alteration, expansion, remodeling, or the services of a general building contractor, architect, or engineer." *Id.* § 423.3(37). The regulations distinguish between services performed for "repairs" and "installation" subject to sales tax and "remodeling" services exempt from tax. The parties disagree whether the sales tax applies to labor installing items sold by Lowe's to homeowners through installation contracts, specifically windows, doors, dishwashers, garbage disposals, faucets, toilets, sinks, vanities, and ceiling fans installed by subcontractors.

Lowe's protested the Department's sales tax assessment, and an administrative law judge (ALJ) on summary judgment found the disputed transactions were properly taxed as "repairs" and that the services of a general building contractor are only exempt when performed in connection with new construction, reconstruction, alteration, expansion, or remodeling. On intra-agency appeal, the director upheld the sales tax assessment as taxable "installation" services. On judicial review, the district court affirmed. We retained Lowe's' appeal. Lowe's does not challenge the validity of the regulations promulgated by the Department but contends the agency erred in applying the Iowa Code and

regulations. The parties disagree on the deference owed to the Department's rulings.

On our review, we conclude the Department's application of law to fact is entitled to deference and should be upheld unless it is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*m*). For the reasons elaborated below, we uphold the sales tax assessment except as to carpentry services. The Department's own regulations limit the definition of carpentry services subject to sales tax to those performed for repairs. The director's final order disavowed the ALJ's finding that the installation services constituted repairs, which in our view means the sales tax did not apply to carpentry for installations other than repairs. By contrast, the regulations expressly define the electrical and plumbing services to include installations. The director correctly determined these installation services by electrical and plumbing subcontractors, which involved no structural changes to the homes of customers, did not fall within the statutory exemption for "new construction, reconstruction, alteration, expansion, remodeling, or the services of a general building contractor." *Id.* § 423.3(37). We strictly construe exemptions to tax statutes. We therefore affirm in part, reverse in part, and remand with instructions for the district court to direct the Department to recalculate the sales tax assessment consistent with this opinion.

## I. Background Facts and Proceedings.

Lowe's operates eleven big-box home improvement stores in Iowa. It sells a variety of products, including lumber, siding, shingles, paint, electrical and plumbing supplies, doors, windows, cabinets, sinks, ceiling fans, and appliances. Lowe's primarily engages in two types of customer transactions: over-the-counter retail sales of merchandise and installation sales contracts.

To make an over-the-counter retail purchase, the customer selects products in the store and takes them to a checkout counter. The cashier scans the products' bar codes, and the store's computer system calculates the sales tax based on the item's retail price. The customer pays the sales price and tax at checkout and departs with the merchandise. These transactions are not at issue in this case.

The home improvements at issue here are installed custom storm windows and doors, faucets, toilets, built-in dishwashers, ceiling fans, patio doors, interior and exterior doors, sinks, vanities, and garbage disposals. Based on the Department's regulations, the retailer must pay tax on the cost of materials used during installation. The fighting issue is whether Lowe's is required to collect taxes on the installation labor. The Iowa Code imposes a sales tax on sixty-six categories of services. *Id.* § 423.2(6). At issue are "carpentry," "electrical and electronic repair and installation," and "pipe fitting and plumbing." *Id.* The Iowa Administrative Code provides guidance on which types of activities fall under each category of taxable services. These services are exempt from taxation when performed in connection with "new construction, reconstruction, alteration, expansion, remodeling, or the services of a general building contractor, architect, or engineer." *Id.* § 423.3(37).

To have Lowe's arrange installation, the customer visits a service station within the store. The customer describes the project and selects the products to be installed. Lowe's issues a printed estimate that states in part,

> Lowes is a supplier of materials only. Lowes does not engage in the practice of engineering, architecture, or general contracting. Lowes does not assume any responsibility for design, engineering, or construction; for the selection or choice of materials for a general or specific use; for quantities or sizing of materials; for the use or installation of

materials; or for compliance with any building code or standard of workmanship.

(Capitalization modified.). Lowe's subcontracts with third-party "installers" who install the products in the customer's home. The installer may first visit the customer's home to outline the scope of the project, take measurements, and estimate the labor cost and quantity of materials needed to complete the project. Lowe's charges the customer a detailing fee for this service.

If the installation process is standard, or once an installer has completed an estimate, a description of the materials and the labor cost estimate is entered into the store's computer system. The computer tracks the cost of goods and materials and the installation labor charge. Lowe's then prepares an "installed sales contract," which sets forth the cost of materials, cost of labor, sales tax charges for materials and labor (if any), the total cost, and other terms of the sale.

If the customer agrees to the price and terms, the customer and a Lowe's representative sign the contract. Lowe's deducts any prior detailing fee and the customer goes to the checkout counter to pay the total project cost. The customer typically leaves the store without the products and materials purchased through the contract, but with a contractual right to their installation in his or her home. Lowe's holds any in-stock items for the installer to pick up. The customer does not own the items purchased until they are installed at the customer's home. The installer returns surplus materials to the store when the project is complete.

The terms of the installed sales contracts expressly "assume[] sound existing substructures, superstructures and points of attachment" at the purchaser's home. The contracts typically also include disclaimers

such as noting the installation services do not include "alterations to existing structure[s]," "[c]hanging or moving venting," "[c]hanging or moving electrical lines," "[c]hanging or moving plumbing/supply lines," or "[i]nstalling new electrical line, additional boxes or switches." Craig Price, Lowe's' Director of Sales and Use Tax, testified by affidavit and described Lowe's' role in the installation contracts is to

> (1) serve as the general building contractor to ensure the installations are performed correctly;
>
> (2) complete each home improvement for the specified fixed price; and
>
> (3) absorb any excess costs if the actual labor and/or material costs exceed the amounts estimated.

If the installation does not meet the customer's approval, Lowe's arranges for corrective measures. Lowe's is responsible for obtaining licenses and building permits if needed and warrants that the installation will be completed in a workmanlike manner. Lowe's is also responsible for ensuring the installation work complies with safety rules and building codes, zoning ordinances, and other laws.

Under the terms of the installed sales contracts, Lowe's is required to sell the goods, materials, and installation services at the prices set in the contract. The contract price includes the cost of goods sold, installation services, and taxes. Lowe's pays sales and use tax based on the cost of the goods and materials sold under installed sales contracts at the time Lowe's withdraws the items from its inventory. But Lowe's does not collect or pay sales tax on the price customers paid for installation services. Nor do the installers or customers pay sales tax for the installation services.

In 2007, the Department conducted a sales tax audit of Lowe's for the three-year period beginning January 1, 2004, and ending

December 31, 2006. On January 17, 2008, the Department issued a sales tax assessment of $1,794,450.40 plus interest on the labor performed for the installation of various home-related products sold by Lowe's. The Department determined that homeowners who received the installed home improvements should have been separately assessed sales tax on the labor. Because Lowe's did not collect this additional tax from its customers, the Department assessed the tax plus interest against Lowe's. This sales tax on the labor was in addition to the sales tax Lowe's already paid on the items sold. The Department found this incidental work was independently taxable as enumerated repair services under Iowa Code section 423.2(6). The Department concluded that Lowe's' installation contracts did not involve structural changes to real property, which according to the Department, is a prerequisite to exempting the labor from sales tax under Iowa Code section 423.3(37) and its implementing regulations.

Lowe's and the Department resolved most of the assessment through informal procedures. Lowe's filed a timely protest for the sum remaining in dispute: $249,806.22 including interest through November 30, 2012. Interest continues to accrue monthly. The Department rejected Lowe's' protest and the matter proceeded to an appeal before an ALJ. The parties conducted discovery and submitted the matter to the ALJ for summary adjudication.

After a hearing, the ALJ issued a proposed decision granting summary judgment in favor of the Department. The ALJ found (1) the installations were taxable as enumerated repair services under Iowa Code section 423.2(6); (2) the home improvements were not sufficiently large in scale to qualify as new construction, reconstruction, alteration, expansion, or remodeling of a building or structure under section

423.3(37); and (3) the services of a general building contractor are only exempt if they are performed on or in connection with new construction, reconstruction, alteration, expansion, or remodeling.

Lowe's appealed the proposed order to the director of the Department. The director issued a final order affirming the proposed order from the ALJ. The director modified the order to conclude that under the definitions promulgated by the Department, the home improvement installations Lowe's performed were not repair services but were subject to sales tax as installation services.

Lowe's petitioned the district court for judicial review of the final order. The district court affirmed the final order, concluding that the Department's "application of the law to the facts . . . was not irrational, illogical or wholly unjustifiable." Lowe's appealed the district court decision, and we retained the appeal.

## II. Standard of Review.

Our review is governed by the Iowa Administrative Procedure Act, Iowa Code section 17A.19. *Nance v. Iowa Dep't of Revenue*, 908 N.W.2d 261, 267 (Iowa 2018). The district court acts in an appellate capacity in exercising judicial review of agency action. *Id.* We apply the standards of Iowa Code section 17A.19(10) to determine if we reach the same result as the district court. *Id.*

Lowe's does not challenge the validity of the rules promulgated by the Department to implement chapter 423.[1] Rather, Lowe's contends the

---

[1]The Department's rulemaking authority to administer chapter 423 is included in the preceding chapter. Specifically, the Department is empowered to administer the taxes imposed in section 423.2 "in the same manner and subject to all the provisions of, and all of the powers, duties, authority, and restrictions contained in . . . sections 422.67 through 422.75." Iowa Code § 423.42. Iowa Code section 422.68 provides, "The director shall have the power and authority to prescribe all rules not inconsistent with the provisions of this chapter, necessary and advisable for its detailed administration and to effectuate its purposes." *Id.* § 422.68(1). Lowe's does not contest the

Department has misinterpreted and misapplied the governing provisions. "We defer to the agency's interpretation of law when the legislature has clearly vested that interpretation in the agency's discretion." *Kay-Decker v. Iowa State Bd. of Tax Review*, 857 N.W.2d 216, 222 (Iowa 2014). Otherwise, we review the interpretation for correction of errors at law. *Id.* We find no Iowa Code provision expressly granting the Department authority to interpret the sales tax provisions in chapter 423. We need not decide whether the Department has interpretive authority over chapter 423 because even without any deference to the agency, we agree with the Department's interpretation of the governing statutes and rules. *See KFC Corp. v. Iowa Dep't of Revenue*, 792 N.W.2d 308, 312 (Iowa 2010) (declining to decide whether the Department had interpretive authority because we agreed with the agency's interpretation).

Factual determinations as to sales tax obligations are vested in the Department. *Iowa Ag Constr. Co. v. Iowa State Bd. of Tax Review*, 723 N.W.2d 167, 173 (Iowa 2006). We are bound by the agency's factual findings that are supported by substantial evidence in the record when the record is viewed as a whole. Iowa Code § 17A.19(10)(*f*); *Iowa Ag Constr. Co.*, 723 N.W.2d at 173. "Because factual determinations are by law clearly vested in the agency, it follows that application of the law to the facts is likewise vested by a provision of law in the discretion of the agency." *Iowa Ag Constr. Co.*, 723 N.W.2d at 174. "We can therefore reverse the agency's application of the law to the facts only if we determine such application was 'irrational, illogical, or wholly unjustifiable.' " *Id.* (quoting Iowa Code § 17A.19(10)(*m*)).

---

Department's statutory authority to promulgate rules implementing the sales tax provisions of chapter 423. Nor does Lowe's contest the validity of those rules.

Our review of constitutional questions is de novo.  *KFC Corp.*, 792 N.W.2d at 312.

**III. Analysis.**

This case turns on the application of law to undisputed facts.  The governing law includes the sales tax provisions and exemptions in Iowa Code chapter 423 and the implementing regulations promulgated by the Department.  We begin our analysis with the applicable canons of construction for tax statutes and exemptions.  Next, we set forth the operative provisions of the Code and regulations and apply our deferential review to the Department's application of that law to the facts.

**A. Construction of Tax Statutes.**  "Statutes which impose taxes are construed liberally in favor of the taxpayer and strictly against the taxing body."  *Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 762 (Iowa 1981).  But "taxation is the rule, exemption is the exception."  *Iowa Network Servs., Inc. v. Iowa Dep't of Revenue*, 784 N.W.2d 772, 776 (Iowa 2010).  "Exemptions from taxation, therefore, are 'construed strictly against the taxpayer and liberally in favor of the taxing body.' "  *Id.* (quoting *Ranniger v. Iowa Dep't of Revenue & Fin.*, 746 N.W.2d 267, 269 (Iowa 2008)).  All doubts must be resolved in favor of taxation.  *Dial Corp. v. Iowa Dep't of Revenue & Fin.*, 634 N.W.2d 643, 646 (Iowa 2001).  "A taxpayer seeking to come under a tax exemption statute has the burden of proving an entitlement to the exemption."  *Ballstadt v. Iowa Dep't of Revenue*, 368 N.W.2d 147, 148 (Iowa 1985); *see also Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 424 (Iowa 2010) (same).

**B. Governing Iowa Code Provisions and Administrative Rules.**  During the relevant time period, the Iowa Code imposed a five percent sales tax on the furnishing of certain services, including "carpentry,"

"electrical and electronic repair and installation," and "pipe fitting and plumbing" services. Iowa Code § 423.2(5)–(6). But the legislature included an exemption from sales tax for "[t]he sales price of services on or connected with new construction, reconstruction, alteration, expansion, remodeling, or the services of a general building contractor, architect, or engineer." *Id.* § 423.3(37).

The Iowa Code also imposed a five percent sales tax on "the sales price of all sales of tangible personal property, consisting of goods, wares, or merchandise, sold at retail in the state to consumers or users except as otherwise provided in this subchapter." *Id.* § 423.2(1). Lowe's does not contest the imposition of sales tax on the merchandise it sold to homeowners through the installed sales contracts. Instead, Lowe's contests the imposition of sales tax on the labor installing the merchandise in the customer's homes. We must determine whether the installation services were taxable under the Iowa Code.

1. *Whether the services were taxable under Iowa Code section 423.2(6).* Lowe's challenges the tax imposed on the labor performed in the installation of custom storm windows and doors, faucets, toilets, built-in dishwashers, ceiling fans, patio doors, interior and exterior doors, sinks, vanities, and garbage disposals. The Department found these installation services were taxable as carpentry, electrical and electronic repair and installation, and plumbing and pipe fitting services. Specifically, the Department found the installation of dishwashers and garbage disposals involved electrical installation and plumbing; the installation of ceiling fans involved carpentry and electrical installation; the installation of vanity tops, windows, storm doors, patio doors, and interior and exterior doors involved carpentry; and the installation of faucets, toilets, and sinks involved plumbing.

The legislature did not codify definitions of the services at issue, but the Department promulgated regulations that define them. The regulation defining "carpentry" provides, "Persons engaged in the business of *repairing*, as a carpenter, as the trade is known in the usual course of business, are rendering, furnishing, or performing a service, the gross receipts from which are subject to tax." Iowa Admin. Code r. 701—26.12 (emphasis added). This regulatory definition expressly limits the scope of taxable carpentry services to repairing and omits the terms "installing" or "installation."

"Electrical and electronic repair and installation services" are more broadly defined to include services performed by "[p]ersons engaged in the business of repairing or *installing* electrical wiring, fixtures, switches in or on real property or repairing or installing any article of personal property powered by electric current." *Id.* r. 701—26.16 (emphasis added). This regulation expressly encompasses both repairs and installations.

" 'Pipe fitting and plumbing' shall mean the trade of fitting, threading, *installing* and repairing of pipes, fixtures or apparatus used for heating, refrigerating, air conditioning or concerned with the introduction, distribution and disposal of a natural or artificial substance." *Id.* r. 701—26.36 (emphasis added). Again, the definition in this regulation expressly encompasses both repairs and installations.

These regulations are binding on the Department. The Department acknowledges that the installation services Lowe's provided were not repairs. Lowe's argues that because the definition of carpentry is limited to repairs and omits installation services, the sales tax did not apply. We agree. The Department included both installing and repairing in its definitions for electrical and plumbing services but omitted

installing from its definition of carpentry. We assume its omission was intentional and give it effect. *See Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 193 (Iowa 2011) (assuming legislature's placement of term in one provision but not another was intentional). Regardless, "[w]hen an agency elects to be its own lexicographer, persons are entitled to rely upon the established definitions." *AOL LLC v. Iowa Dep't of Revenue*, 771 N.W.2d 404, 409 (Iowa 2009). Provisions imposing taxes are construed strictly against the Department. *Iowa Auto Dealers Ass'n*, 301 N.W.2d at 762. We hold that the Department erred by assessing sales tax on carpentry services for installations not constituting repairs.

By contrast, the definitions of "electrical and electronic repair and installation" and "pipe fitting and plumbing" encompass both repairs and installations. For that reason, the Department's imposition of sales tax on those installation services was lawful, subject to the exemption in Iowa Code section 423.3(37).

According to the Department, the installation of vanity tops, windows, storm doors, patio doors, and interior and exterior doors involved carpentry alone without electrical or plumbing services. We reverse the district court judgment upholding the sales tax on the installation of those items. But if carpentry services were included on installations also involving electrical or plumbing services, the Department on remand must adjust the sales tax assessment subject to the predominant service rule discussed below.

2. *Whether the services fall under the exemption in Iowa Code section 423.3(37).* Lowe's argues that even if the contracts involved enumerated services, the services at issue are exempt from taxation under section 423.3(37). Lowe's' argument is two-pronged. First, it

contends that any installation of the products it sold that become a permanent fixture of the real estate fall within the statutory exemption for "new construction, reconstruction, alteration, expansion, [or] remodeling"—even, for example, the installation of a new ceiling fan in an existing room. Second, Lowe's contends the installation services are exempt as "the services of a general building contractor." We address each argument in turn.

i. *"[S]ervices on or connected with new construction, reconstruction, alteration, expansion, [or] remodeling."* We begin with the statutory text. Section 423.3 exempts from sales tax

> [t]he sales price of services on or connected with new construction, reconstruction, alteration, expansion, remodeling, or the services of a general building contractor, architect, or engineer. The exemption in this subsection also applies to the sales price on the lease or rental of all machinery, equipment, and replacement parts directly and primarily used by owners, contractors, subcontractors, and builders for new construction, reconstruction, alteration, expansion, or remodeling of real property or structures and of all machinery, equipment, and replacement parts which improve the performance, safety, operation, or efficiency of the machinery, equipment, and replacement parts so used.

Iowa Code § 423.3(37). The Department promulgated this regulation implementing section 423.3(37):

> The distinction between a repair . . . and new construction, reconstruction, alteration, expansion and remodeling activities . . . can, oftentimes, be difficult to grasp. Therefore, the intent of the parties and the scope of the project may become the factors which determine whether certain enumerated services are taxable. An area of particular difficulty is the distinction between repair and remodeling. Remodeling a building or other structure means much more than making repairs or minor changes to it. *Remodeling is a reforming or reshaping of a structure or some substantial portion of it to the extent that the remodeled structure or portion of the structure is in large part the equivalent of a new structure or part thereof.*

Iowa Admin. Code r. 701—219.13 (emphasis added).

Lowe's does not challenge the validity of this regulation, which has been in effect since 2005. The legislature has not amended section 423.3(37) in response to this administrative rule. "We consider the legislature's inaction as a tacit approval of the [agency's] action." *City of Sioux City v. Iowa Dep't of Revenue & Fin.*, 666 N.W.2d 587, 592 (Iowa 2003) (noting that the administrative rule being in effect for eleven years weighs against finding the rule invalid).

Significantly, this regulation explains the exemption applies to home improvement projects of a size or scale "the equivalent of a new structure or part thereof." Iowa Admin. Code r. 701—219.13. The Department and district court determined that section 423.3(37)'s exemption does not apply to small-scale installations without structural changes to the customer's home. We agree.

The regulation gives examples of projects that constitute "new construction, reconstruction, alteration, expansion, [and] remodeling":

> *a.* The building of a garage or adding a garage to an existing building would be considered new construction.
>
> *b.* Adding a redwood deck to an existing structure would be considered new construction.
>
> *c.* Replacing a complete roof on an existing structure would be considered reconstruction or alteration.
>
> *d.* Adding a new room to an existing building would be considered new construction.
>
> *e.* Adding a new room by building interior walls would be considered alteration.
>
> . . . .
>
> *i.* Rebuilding a structure damaged by flood, fire or other uncontrollable disaster or casualty would be considered reconstruction.
>
> *j.* Building a new wing to an existing building would be considered an expansion.
>
> *k.* Rearranging the interior physical structure of a building would be considered remodeling.
>
> . . . .

*m.* Replacing an entire water heater, water softener, furnace or central air conditioning unit.

*Id.* r. 701—219.13(2). The foregoing examples involve home improvement projects of a larger scale than the installation of fixtures or other building components at issue here—windows, doors, dishwashers, garbage disposals, toilets, sinks, vanities, and ceiling fans.

Lowe's nevertheless argues that all of its installation services are exempt under section 423.3(37) because they were performed on or connected with new construction, reconstruction, alteration, expansion, or remodeling. Lowe's argues for a bright-line distinction to determine whether a service is subject to sales tax. According to Lowe's, there are only two categories of services: repairs, which are taxable,[2] and capital improvements, which are not taxable under the exemption. Lowe's argues there is no "third category" of installation services that are neither repairs nor exempt under section 423.3(37). We disagree. The regulation, after providing a list of examples within the exemption, acknowledges the third category of projects not falling within section 423.3(37)'s exemption that are subject to sales tax on the installation labor. Iowa Admin. Code r. 701—219.13(3) ("The department would like to emphasize that facts and motives are important in the determination of the taxability of services relating to construction activities. However, it should also be noted that taxes on enumerated services are applicable to

---

[2]The regulations define "repair" as,

synonymous with mend, restore, maintain, replace and service. A repair contemplates an existing structure or tangible personal property which has become imperfect and constitutes the restoration to a good and sound condition. A repair is not a capital improvement; that is, it does not materially add to the value or substantially prolong the useful life of the property.

Iowa Admin. Code r. 701—219.13(1).

repair *or installation work* that is not a construction activity." (Emphasis added.)).

The director of the Department determined that the installation of the items at issue here did not fall within the exemption in section 423.3(37). The director explained that although "Iowa Administrative Code 701—219.13 discusses at length the distinction between 'repair' and 'remodeling[,]' [t]his discussion does not preclude an alternate context in which enumerated services can be performed by a contractor-retailer." The district court affirmed, stating,

> The ALJ's and director's conclusions that the Construction Exemption requires activity that is significantly larger in size and scope than the Lowe's installation contracts are not irrational, illogical or wholly unjustifiable. Rule 701—219.13 demonstrates that the Department since at least 2005 has construed new construction, reconstruction, alteration, expansion, or remodeling to be more than "minor changes." To be subject to the Construction Exemption the activity must constitute "a reforming or reshaping of a structure or some substantial portion of it to the extent that the remodeled structure or portion of the structure is in large part the equivalent of a new structure or part thereof." A review of the cases cited in the rule confirms this concept. The conclusion reached by the director on this issue is not irrational, illogical or wholly unjustifiable.

(Footnotes omitted.) We agree with the Department and district court. Exemptions are construed strictly against the taxpayer. *Iowa Network Servs., Inc.*, 784 N.W.2d at 776. We must read chapter 423 as a whole, and harmonize its provisions. Lowe's' interpretation would broaden the exemption in 423.3(37) to any service that is not a repair, in conflict with section 423.2(6) imposing a sales tax on electrical and plumbing installation services. We decline to construe the statutory exemption to encompass the installation of any item that becomes a fixture. Installations of items such as sinks or ceiling fans, without more, do not

involve the scale or structural changes required to result in the equivalent of a new room or structure.

To the contrary, the terms of the Lowe's installed sales contracts take the transactions at issue outside the scope of section 423.3(37). The contracts expressly "assume[] sound existing substructures, superstructure and points of attachment" at the purchaser's home. Lowe's has also included in the installed sales contracts disclaimers such as the installation services do not include "[a]ny alterations to [the] existing structure," "[c]hanging or moving or electrical lines," "[c]hanging or moving plumbing/supply lines," "[c]hanging or moving venting," "[m]odifying existing cabinet(s) or countertop," or "[r]eframing or alterations to existing structure or carpentry work resulting from old or damaged structure." The installations at issue did not involve structural changes of the type that would fall within section 423.3(37)'s exemption for new construction, reconstruction, alteration, expansion, or remodeling. The Department's determination that the exemption does not apply to the installation services was not irrational, illogical, or wholly unjustifiable. We therefore affirm that determination.

ii. *"[T]he services of a general building contractor, architect, or engineer."* Lowe's also argues that it was performing "the services of a general building contractor" within the meaning of section 423.3(37). Craig Price testified that Lowe's "served as the general building contractor to ensure that the installation was performed correctly." The Department responds that the installation services subject to the sales tax were actually performed by subcontractors, not by Lowe's. We must interpret the words in context. The exemption includes "general building contractors," with "architects, and engineers." Under the canon of statutory construction *noscitur a sociis*, "the meanings of particular

words may be indicated or controlled by associated words." *Des Moines Flying Serv., Inc. v. Aerial Servs., Inc.*, 880 N.W.2d 212, 221 (Iowa 2016) (quoting *Peak v. Adams*, 799 N.W.2d 535, 547 (Iowa 2011)). Reading those terms together supports the Department's plain language interpretation that the work of a general building contractor on a project, like that of the architect or engineer, differs from the physical installation work actually performed in this case by subcontractors. Rather, the services of "a general building contractor, architect, or engineer" typically involve the design and planning for the project, and work overseeing and coordinating the subcontractors performing the physical installations. Indeed, the Lowe's printed estimates in the agency record include the disclaimer stating, "Lowes is a supplier of materials only. Lowes does not engage in the practice of engineering, architecture, or general contracting." (Capitalization modified.) As noted, the terms of Lowe's installed sales contracts provide for straightforward physical installations without the type of structural changes to the home that require the services of a general building contractor, architect, or engineer. In any event, the sales tax was imposed on the installation labor performed by subcontractors, not Lowe's.

Moreover, the Department's regulations limit the exemption to services the general building contractor performs on or connected with new construction, reconstruction, alteration, expansion, or remodeling. *See, e.g.*, Iowa Admin. Code r. 701—219.1 ("Contractors may also be retailers of tangible personal property and taxable enumerated services. It should be noted that these services are exempt from taxation when performed on or in connection with new construction, reconstruction, alteration, expansion, or remodeling of a building or structure."). Lowe's does not challenge the validity of this regulation, which has been in effect

since 2005. *See City of Sioux City*, 666 N.W.2d at 592 (considering legislature's inaction as tacit approval). We reiterate that we strictly construe exemptions against the taxpayer. *Sherwin-Williams Co.*, 789 N.W.2d at 424. For those reasons, we affirm the Department's rejection of Lowe's general building contractor argument.

3. *The contractor-retailer rule.* Lowe's also relies on Iowa Code section 423.2(1)(*b*), known as the "contractor-retailer rule," which governs the timing and payee for the sales tax on building materials and provides,

> Sales of building materials, supplies, and equipment to owners, contractors, subcontractors, or builders for the erection of buildings or the alteration, repair, or improvement of real property are retail sales of tangible personal property in whatever quantity sold. Where the owner, contractor, subcontractor, or builder is also a retailer holding a retail sales tax permit and transacting retail sales of building materials, supplies, and equipment, the person shall purchase such items of tangible personal property without liability for the tax if such property will be subject to the tax at the time of resale or at the time it is withdrawn from inventory for construction purposes.

Under this provision, Lowe's as a contractor-retailer pays sales tax when the property "is withdrawn from inventory for construction purposes." Lowe's argues that the Iowa Contractors Guide (ICG),[3] published by the Department, provides that any installation labor provided pursuant to a construction contract must be excluded from sales tax because the contractor-retailer "does not collect sales tax from the final customer." Lowe's reliance on the ICG and the contractor-retailer rule is misplaced. Section 423.2(1)(*b*) addresses only the sales tax on items of personal property, not on the labor to install them. The Department has not imposed sales tax on services in a manner

---

[3]Iowa Dep't of Revenue, *Iowa Contractor's Guide* (2004).

inconsistent with its ICG. To the contrary, the ICG applies to "construction contracts" expressly defined as "an agreement that provides labor *and* materials to erect a structure for a second party." ICG at 1. As noted above, labor involved in new construction or other *structural* changes to buildings falls within the exemption for "new construction, reconstruction, alteration, expansion, [or] remodeling." Iowa Code § 423.3(37).

**C. Lowe's Remaining Arguments.** Lowe's raises a number of additional arguments. We will address each argument in turn.

1. *Predominant service rule.* Lowe's argues that it is exempt from taxation because the primary service provided under these contracts was the installation of nontaxable capital improvements. Under the predominant service rule,

> When taxable and nontaxable services are performed as part of one transaction and the charge for the transaction is a lump-sum fee that is not itemized or separately contracted, the taxation of the fee for the entire transaction is determined by the predominant service being performed. *Iowa Movers and Warehousemen's Association v. Briggs*, 237 N.W.2d 759 (Iowa 1976). If the predominant service being provided in the transaction is a taxable enumerated service, then the entire fee for the transaction is subject to Iowa tax. However, if the predominant service being performed is a nontaxable service, then the entire fee charged for the transaction is not subject to Iowa tax.

Iowa Admin. Code r. 701—26.1(2).

The Iowa Tax Review Committee explained this rule with regard to installing an air conditioning system:

> Some enumerated services may be involved with the installation of the air conditioning equipment such as electrical installation and pipe fitting and plumbing services.
>
> However, these enumerated services were incidental to the overall installation of the air conditioning equipment. It has been the Department's position that, where a name[d] service is incidental to a service not specifically enumerated,

the entire service is not subject to tax. Therefore it is the position of the Committee that the installation of air conditioning systems, whether a new installation or a replacement, is exempt from the sales tax.

J. Elliott Hibbs, Iowa Tax Review Comm., *Findings of the Tax Review Committee in Regard to Tax Question by Field Personnel* (May 11, 1976).

Lowe's argues the homeowners were purchasing new, installed home improvements and that all of the services at issue in this case were "on or connected with new construction, reconstruction, alteration, expansion, [or] remodeling" of real property. Lowe's argues that because the predominant service was installing permanent capital improvements, pursuant to the predominant service rule, the incidental labor portions of installation contracts that fall under enumerated tax sections are exempt from taxation.

We have already determined that Lowe's was performing installation services subject to sales tax rather than services exempt under Iowa Code section 423.3(37). Accordingly, Lowe's reliance on the predominant service rule is without merit on installation labor not involving carpentry.

The predominant service rule does come into play for installations involving carpentry and plumbing or electrical services. For example, the Department found that the installation of ceiling fans involved both carpentry and electrical services. Whether sales tax applies for the installation of ceiling fans should be determined under the predominant service rule. Neither the Department nor the district court made that determination. We will not decide that issue on appeal. *See Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 413 (Iowa 2017) ("A supreme court is 'a court of review, not of first view.' " (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7, 125 S. Ct. 2113, 2120 n.7 (2005)); *see also*

*Felderman v. City of Maquoketa*, 731 N.W.2d 676, 679 (Iowa 2007) ("Ordinarily we do not decide an issue on appeal that was not raised by a party or decided by the district court."). Rather, that determination must be made by the Department on remand as to ceiling fan installations and any other transactions involving carpentry and electrical or plumbing services. Sales tax shall not be assessed on labor in transactions in which the predominant service was carpentry installation.

2. *Bifurcation.* Lowe's argues that because the installation contracts charged a lump sum, the Department erred by splitting the transaction into separate sales tax events for the goods and labor to be paid by separate taxpayers. Lowe's argues that neither the Iowa Code nor the Department's regulations authorize the bifurcation of sales tax charges.

Lowe's argues that there are only three types of transactions that a contractor-retailer can perform: (1) an over-the-counter retail sale of products, for which the customer owes sales tax for the entire transaction; (2) the installation of products pursuant to a construction contract, for which the contractor-retailer would owe use tax on the cost of installed product; and (3) repair of a product for which the customer would owe sales tax on the entire transaction. Iowa Admin. Code r. 701—219.4. Lowe's argues that in each scenario, one taxpayer owes only one tax. Lowe's argues that no regulations allow bifurcating a transaction into separately taxable events.

The administrative code explains that

> [chapter 423] details the obligation of contractors, contractor-retailers, retailers, and repairpersons to pay or collect sales tax on the sales price from sales of building materials, supplies, equipment, and other tangible personal property and the obligation of these parties to collect tax or claim exemption for their performances of taxable services.

Iowa Admin. Code r. 701—219.1.  The director of the Department found that Lowe's bifurcation argument was without merit:

> The statutes at issue are separate and distinct.  One imposes tax on the owner, contractor, subcontractor or builder for materials purchased to erect buildings or alter, *repair or improve real property*.  Iowa Code § 423.2(1)(b) (emphasis added).  The other statute exempts the sales price of enumerated services when they are performed in connection with new construction, reconstruction, alteration, expansion or remodeling.  *Id.* § 423.3(37).  There is nothing in the exemption statute that exempts the sales price of services when performed in the context of a repair or improvement of real property that occurs outside the scope of a larger construction project.

We agree with the Department and reject Lowe's bifurcation argument.

3. *Other states.*  Lowe's argues that Department's interpretation of the relevant statutes conflicts with the interpretations of other state courts and taxing authorities and violates Iowa's commitment to uniformity under the Streamlined Sales and Use Tax Agreement (SSUTA). *See* Iowa Code § 423.11.  Relying on decisions from other jurisdictions, Lowe's contends that the Department's position makes Iowa an outlier. The Department responds that the SSUTA focuses on sales tax *administration* and not on the substance of the law, and while it strives for uniformity in the definitions of items subject to sales tax, it does not require members to have the same taxable transactions and exemptions. The Department notes that the cases from other states are distinguishable because the text of their respective statutes differs materially from Iowa's.  We agree with the Department.

The purpose of the SSUTA is "to simplify and modernize sales and use tax administration in order to substantially reduce the burden of tax compliance for all sellers and for all types of commerce."  *Id.* § 423.8. But section 103 of the SSUTA states, "This Agreement shall not be

construed as intending to influence a member state to impose a tax on or provide an exemption from tax for any item or service." Streamlined Sales and Use Tax Agreement § 103 (2002) (Streamlined Sales Tax Governing Bd., Inc., amended 2018); *see also* Iowa Code § 423.11 (noting that the agreement requires uniform rates, standards, and definitions, but states are able to make policy choices consistent with the rates, standards, and definitions).

Lowe's relies on decisions from Indiana, Kansas, and Oklahoma to support its argument that the installation services here are not subject to tax. The Indiana and Oklahoma cases addressed the issue of taxing the products, not the installation labor. *See, e.g.*, *Lowe's Home Ctrs., LLC v. Ind. Dep't of State Revenue*, 23 N.E.3d 52 (Ind. T.C. 2014); *In re Sales Tax & Use Tax Protest of Lowe's Home Ctrs.*, LLC, No. P-09-195-H (Okla. Tax Comm'n July 7, 2014), *aff'd*, 2015 WL 1530422 (Okla. Tax Comm'n Feb. 26, 2015).

The Kansas case addressed installation services, but the Kansas statute differs from Iowa's by providing a much broader exemption. The Kansas statute stated,

> No tax shall be imposed upon the service of installing or applying tangible personal property in connection with the original construction of a building, or facility, the original construction, reconstruction, restoration, remodeling, renovation, repair, or replacement of a residence or the construction, reconstruction, restoration, replacement or repair of a bridge or highway.

*In re Lowe's Home Ctrs., L.L.C.*, No. 2014-34-DT, at 8–9 (Kan. B.T.A. Jan. 21, 2016) (quoting Kan. Stat. Ann. § 79–3603(p) (Supp. 2012)). The Kansas Board of Tax Appeals found,

> Lowe's has satisfied its burdens by presenting substantial credible, mostly uncontroverted evidence that the built-in transactions at issue all involved improvements to

residential properties and, further, that Lowe's, in undertaking these installations, was acting as a contractor. Moreover, the Board finds these installations of real property improvements were performed in connection with the reconstruction, restoration, remodeling, renovation, repair and/or replacement of a residence and are, therefore, exempt from the retailers' sale tax pursuant to [the relevant tax statute].

*Id.* at 14. The Kansas Court of Appeals, in an unpublished decision, affirmed the Board of Tax Appeals. *In re Lowe's Home Ctrs., L.L.C.*, No. 115,254, 2017 WL 1369944, at *26 (Kan. Ct. App. Apr. 14, 2017) (per curiam). The court declined to rely on decisions cited by Lowe's from other jurisdictions, noting "the statutes in those states differ from the statutes in Kansas." *Id.* at *23.

For the same reason, we decline to rely on cases from other states interpreting statutes that differ from Iowa Code chapter 423. We must apply Iowa's tax statute as written. As explained above, the Department correctly assessed sales tax on the electrical and plumbing installation services.

4. *Constitutional claims.* Lowe's argues that the Department violated its federal and state constitutional rights to due process and equal protection. The district court found that Lowe's had failed to preserve the due process issue for review because Lowe's failed to raise the issue before the agency. Lowe's argues that it raised a due process challenge in paragraphs thirty-nine through forty-five of its amended protest. These paragraphs discuss Lowe's' claim that the Department's attempt to apply the electrical services rule to contractors and other nonelectrical construction services violates the Iowa Administrative Procedure Act.

On appeal, Lowe's argues that the provisions at issue are unconstitutionally vague. The void-for-vagueness doctrine has three

principles: (1) the "statute cannot be so vague that it does not give persons of ordinary understanding fair notice that certain conduct is prohibited[,]" (2) the statute "provide[s] those clothed with authority sufficient guidance to prevent the exercise of power in an arbitrary or discriminatory fashion[,]" and (3) the "statute cannot sweep so broadly as to prohibit substantial amounts of constitutionally-protected activities." *State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007).

Lowe's argues that the statutes at issue here are unconstitutionally vague because, when reading the statutes together with the applicable regulations and the SSUTA, there was no authority for the Department to have assessed sales tax against Lowe's related to incidental installation labor, thereby violating Lowe's right to due process.

We agree with the district court that Lowe's failed to raise a due process challenge before the agency. Regardless, Lowe's' due process challenge is without merit. When reading the statutes and regulations, we conclude that a person of ordinary understanding would have fair notice of what activities are taxable. The Department is not permitted to exercise its authority arbitrarily or discriminatorily under the statute and regulations, and Lowe's has failed to show that the sweep of the statute is unconstitutionally overinclusive.

With regard to equal protection, Lowe's argues that the structural change requirement directly conflicts with the Department's published regulations and subjects Lowe's to a higher tax burden than other contractors. For that reason, Lowe's argues Department has violated its right to equal protection. Lowe's raises this claim under the Equal Protection Clause of the Fourteenth Amendment of the United States

Constitution and article I, section 6 of the Iowa Constitution.[4] "[O]n a basic level, both constitutions establish the general rule that similarly situated citizens should be treated alike." *LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 856 (Iowa 2015).

"The equal protection clause . . . protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." *Allegheny Pittsburgh Coal Co. v. Cty. Comm'n*, 488 U.S. 336, 345–46, 109 S. Ct. 633, 639 (1989) (quoting *Hillsborough Township v. Cromwell*, 326 U.S. 620, 623, 66 S. Ct. 445, 448 (1946)). "[T]he legislature acts with broad authority in the realm of taxation." *LSCP, LLLP*, 861 N.W.2d at 859. "We recognize a presumption favoring the constitutionality of taxing statutes." *Sperfslage v. Ames City Bd. of Review*, 480 N.W.2d 47, 49 (Iowa 1992). We review the challenged tax statutes under the rational basis test. *LSCP, LLLP*, 861 N.W.2d at 860. "The rational basis standard is easily met in challenges to tax statutes." *Qwest Corp. v. Iowa State Bd. of Tax Review*, 829 N.W.2d 550, 558 (Iowa 2013) (quoting *Hearst Corp. v. Iowa Dep't of Revenue & Fin.*, 461 N.W.2d 295, 306 (Iowa 1990)).

While both the state and federal constitutional provisions on a basic level establish the general rule that similarly situated citizens should be treated alike, "[w]e may conclude [article I, section 6] is more protective" than the [Equal Protection Clause of the Fourteenth Amendment]. *Tyler v. Iowa Dep't of Revenue*, 904 N.W.2d 162, 166 (Iowa 2017) (alterations in original) (quoting *LSCP, LLP*, 861 N.W.2d at 856); *Racing Ass'n of Cent. Iowa v. Fitzgerald* (*RACI II*), 675 N.W.2d 1, 5–7

---

[4]Article I, section 6 provides, "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6.

(Iowa 2004). In *RACI II*, we applied the rational basis test more stringently than the United States Supreme Court in a taxation context. *Id.* We have applied the *RACI II* test in other tax cases. *See Tyler*, 904 N.W.2d at 165–72; *LSCP, LLP*, 861 N.W.2d at 856–58; *Qwest Corp.*, 829 N.W.2d at 558–66. Here, however, even under the approach of *RACI II* and prevailing federal law, Lowe's has failed to mount a successful equal protection attack.

"The first step of [analyzing] an equal protection claim is to identify the classes of similarly situated persons singled out for differential treatment." *LSCP, LLLP*, 861 N.W.2d at 859 (alteration in original) (quoting *Grovijohn v. Virjon, Inc.*, 643 N.W.2d 200, 204 (Iowa 2002)). "If a plaintiff fails to articulate, and the court is unable to identify, a class of similarly situated individuals who are allegedly treated differently under the challenged statute,' our analysis ends." *Id.* (quoting *Timberland Partners XXI, LLP v. Iowa Dep't of Revenue*, 757 N.W.2d 172, 175 (Iowa 2008)). The district court determined that

> [s]ection 423.2(6)(a) provides that all enumerated services are subject to taxation. The statute provides that the enumerated services may be exempt from taxation if the taxpayer can establish that the services provided meet the Construction Exemption. Thus every contractor including Lowe's is being treated the same. If Lowe's could have established that its installation contracts were performed on or in connection with new construction, reconstruction, expansion, alteration or remodeling they would have been exempt. In this case they could not but Lowe's inability to establish the necessary facts to demonstrate the applicability of the exemption does not create an equal protection violation.

We agree with the district court that every contractor installing home improvements faces the same sales tax consequences subject to the same regulations and exemptions, without disparate treatment. This

legal conclusion is fatal to Lowe's equal protection claim under the Iowa and Federal Constitutions. *See LSCP, LLLP*, 861 N.W.2d at 859.

## IV. DISPOSITION.

For these reasons, we affirm in part and reverse in part the judgment of the district court. The Department's assessment is upheld except as to those transactions in which the predominant service or only service provided was carpentry installation work. We remand the case with instructions for the district court to direct the Department to recalculate the sales tax assessment consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS**.